**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

| | |
|---|---|
| ARVIND GUPTA | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THOMAS PEREZ, Secretary of Labor, | : |
| and WIPRO LTD. | : |
| | : |
| | : |
| Defendant. | : |

_____

Case No. 14-4054 (FLW)

**OPINION**

**WOLFSON, United States District Judge:**

_Pro se_ Plaintiff[1] Arvind Gupta ("Plaintiff," or "Gupta") seeks judicial review of the February 27, 2014 Final Decision and Order issued by the Administrative Review Board ("ARB") of the Department of Labor ("DOL") regarding Plaintiff's DOL complaint filed against Defendant Wipro Limited ("Wipro"), and asserts associated other claims. Presently before the Court are cross-motions for summary judgment filed by (1) Plaintiff; (2) Defendant Thomas Perez, Secretary of Labor ("the Government"); (3) and Wipro. Also before the Court is Plaintiff's motion for

---

[1] Since Plaintiff is a pro se litigant, the Court is obligated to construe his pleadings liberally. _Haines v. Kerner_, 404 U.S. 519, 520 (1972); _Dluhos v. Strasberg_, 321 F.3d 365, 369 (3d Cir. 2004) ("[The Court will] apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name."). However, the Court notes that Plaintiff appears to be an experienced pro se litigant, having represented himself in the administrative proceedings at issue in this case, as well as in other cases involving substantially the same issues as those reviewed infra. _See, e.g._, _Gupta v. Headstrong, Inc._, No. 12 CIV. 6652 RA, 2013 WL 4710388, at *1 (S.D.N.Y. Aug. 30, 2013); _Compunnel Software Grp., Inc. v. Gupta_, No. 14 CIV. 4790 SAS, 2015 WL 1224298, at *5 (S.D.N.Y. Mar. 17, 2015) _reconsideration denied_, No. 14 CIV. 4790 SAS, 2015 WL 1808628 (S.D.N.Y. Apr. 13, 2015).


preliminary injunctive (equitable) relief against Wipro. Plaintiff has separately also filed a motion for leave to file supplemental claims and add a party.

For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and the Government and Wipro's motions for summary judgment are GRANTED. Plaintiff's motion for preliminary equitable (injunctive) relief is also DENIED. Finally, Plaintiff's motion for leave to file supplemental claims and add a party is DENIED WITHOUT PREJUDICE.

## I.     Background

### a.  Gupta's Work with Wipro

The following facts are undisputed unless otherwise indicated. Gupta, a resident of India, entered the United States in 2003 to work for Wipro[2] as an H-1B worker, pursuant to a labor condition application ("LCA") approved by DOL. Govt.'s Stmt. Of Undisputed Mat'l Facts ("Govt.'s Stmt. Of Facts") ¶ 1. Gupta commenced U.S. employment with Wipro on May 11, 2003, and first received wages from Wipro on May 30, 2003. Wipro's Response to Pl.'s Stmt. Of Facts ¶¶ 1, 2. Gupta's initial H-1B visa was approved through August 1, 2005. Wipro's Stmt. Of Facts ¶ 5.

In June 2005, Wipro petitioned United States Citizenship and Immigration Services ("USCIS") for an extension of Gupta's authorized period of employment in the United States. USCIS approved the petition on August 19, 2005, for the period between August 18, 2005 and June 10,

---

[2] "Wipro Limited is amongst the largest global IT services, BPO and Product Engineering companies, and provides consulting, business process outsourcing, business technology services, enterprise application services, infrastructure management, product engineering, engineering design, and product support." Wipro's Stmt. Of Mat'l Facts Not in Dispute ("Wipro's Stmt. Of Facts") ¶ 2.

2

2008. Pl.'s Stmt. Of Facts ¶¶ 5, 6. Likewise, DOL certified the LCA supporting Wipro's H-1B petition for the period between June 14, 2005 and June 10, 2008.  *Id.* ¶ 7; A.R. 494, 397.

In January 2006, Gupta joined a Wipro project in Atlanta, GA. Pl.'s Stmt. Of Facts. ¶ 10; Wipro's Stmt. Of Facts ¶ 11. The parties dispute whether Gupta resigned or whether Wipro relieved Gupta from his duties three months later. However, the parties agree that Wipro did not assign Plaintiff any "fee-producing or productive" work after March 17, 2006,[3] with the exception of wages Wipro paid to Gupta in March 2008 for the month of March. Pl.'s Response to Wipro's Stmt. Of Facts ¶ 13; Govt.'s Stmt. Of Facts ¶ 5; *see also* A.R. 395–96, 496–97.

At the end of April 2009, Gupta departed the United States and returned to India. Govt.'s Response to Pl.'s Stmt. Of Facts ¶ 25. In May 2009, Gupta attempted to start a recruiting business with offices in the United States and in India.[4] Govt.'s Stmt. Of Facts ¶ 6. However, the attempt was unsuccessful. *See* A.R. 81–86.

### b.  *Gupta's DOL Complaint and ALJ Proceedings*

In May 2009, Gupta filed a complaint with DOL's Wage and Hour Division ("WHD") in San Francisco, alleging that Wipro took unauthorized deductions from Gupta's wages and seeking relief under the H-1B nonimmigrant worker provisions of the INA. Pl.'s Stmt. Of Facts ¶ 28; Wipro's Response to Pl.'s Stmt. Of Facts ¶ 28. That same month, the WHD responded to Gupta's complaint and did not find reasonable cause to conduct an investigation, because Gupta filed the

---

[3] Gupta states that "[a]t the end of March 2006 Wipro or its agents or authorized employees relieved Gupta from the project in Atlanta GA . . . . Wipro never terminated Gupta from employment . . . .  Wipro never informed USCIS to cancel or revoke the H-1B petition approved till June 10, 2008 . . . ." Pl.'s Stmt of Facts ¶¶ 11–17. Wipro, on the other hand, contends that Gupta voluntarily resigned from Wipro. Wipro's Response to Pl.'s Stmt. Of Facts ¶¶ 11–17.

[4] As part of that business venture, Gupta received a pay stub from one of Wipro's employees. *Id.* ¶ 7.

complaint more than 12 months after the last alleged unlawful deduction.[5] *See* A.R. 3. However, the WHD permitted Gupta to submit additional information to support his complaint. Pl.'s Response to Wipro's Stmt. Of Facts ¶ 18; A.R. 3.

In June 2009, Gupta filed a second complaint and submitted to the Administrator a single pay stub dated June 1, 2009, from a then-current Wipro employee, asserting that Wipro had also taken unlawful deductions from that employee's pay. Govt.'s Stmt. Of Facts ¶ 11; A.R. 470. Gupta claimed to have obtained the pay stub in his work as a business recruiter. Govt.'s Stmt. Of Facts ¶ 12. By letter dated January 7, 2010, WHD informed Gupta that reasonable cause existed to conduct an investigation of Wipro, and the Complaint was assigned a Case ID number 1570230. Pl.'s Stmt. Of Facts ¶¶ 31, 34; A.R. 1, 471. The WHD considered the complaint to be potentially viable because Gupta appeared to represent himself as a Business Competitor Complaintant, which, if true, meant that Gupta had standing to bring such a complaint as an aggrieved competitor of Wipro. A.R. 3; *see also* 20 C.F.R. § 655.715. Later, however, in an April 22, 2010 email to the WHD investigator in charge of his case, Gupta stated that he had never started a recruiting business. Govt.'s Stmt. Of Facts ¶ 14.

As an apparent result of Gupta's April 2010 email, on May 7, 2010, the Administrator issued a Determination on Gupta's complaint and found no reasonable cause.[6] Pl.'s Stmt. Of Facts ¶¶ 36–

---

[5] "A complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA." 20 C.F.R. § 655.806.

[6] In June 2010, at Gupta's request that the matter be heard in New York City for his convenience, the matter was transferred to the Cherry Hill, New Jersey District Office of Administrative Law Judges. Mar. 28, 2011 Decision and Order Granting Summary Decision; and Dismissing Case at 2. Thereafter, the case was transferred to Lawrenceville, and assigned to ALJ Adele H. Odegard for unspecified reasons. *Id.*; *see also* Aug. 11, 2011 Order of Remand at 3.

37; *see also* A.R. 65–70. On July 12, 2010, Gupta sent an email to WHD, requesting that the principles of equitable tolling be applied to his May 2009 DOL complaint as an aggrieved worker, because Wipro allegedly misled him about his rights. *See* A.R. 124–25. On August 26, 2010, Gupta filed a "Motion for Order Setting Forth Discovery and Briefing Schedule and Motion for Hearing and prehearing Order" with the Office of Administrative Law ("OAL") and requested a hearing regarding his complaint in front of an Administrative Law Judge ("ALJ"). *See id.* ¶¶ 39–41; A.R. 31.

On November 3, 2010, the ALJ issued an order directing the Administrator to show cause why, given the Administrator's initial decision to conduct an investigation based on Gupta's complaint, the Administrator was not required to issue a post-investigation determination letter under 20 C.F.R. § 655.806(b).[7] Pl.'s Stmt. Of Facts ¶ 17; Nov. 3, 2010 ALJ Order.

In her response to the show cause order, the Administrator requested that the ALJ dismiss the case for lack of subject matter jurisdiction. *Id.* ¶ 18. The Administrator attached Gupta's April 22, 2010 email, in which Gupta stated that he had never started a recruiting business, and further argued that based on this admission, Gupta could not file a complaint as an aggrieved "competitor" of Wipro under 20 C.F.R. § 655.715 and § 655.806(a).

In a December 23, 2010 order, the ALJ construed the Administrator's response to the show cause order as a motion for summary decision and invited the parties to supplement the record. *Id.* ¶ 20; A.R. 117. Both Gupta and the Administrator filed supplemental briefs with exhibits. A.R. 120–177. In his supplemental brief, Gupta argued that his complaints should be considered on the

---

[7] 20 C.F.R. § 655.806(b) states that "[w]hen an investigation has been conducted, the Administrator shall, pursuant to § 655.815, issue a written determination as described in § 655.805(a)." *Id.*

following bases: (1) on his own behalf as a "former H-1B worker"; (2) on behalf of a current H-1B worker as a "competitor" or "future or potential competitor," *see* 20 C.F.R. § 655.715; (3) on behalf of a current H-1B worker as a "credible information source," *see* 20 C.F.R. § 655.807;[8] and (4) on behalf of a current H-1B worker (the same worker as alleged in (2) above) as a worker in a specialty occupation in non-productive status within 12 months of filing a complaint.[9] A.R. 128–29.

In a decision and order dated March 28, 2011, the ALJ dismissed Gupta's case. A.R. 232. At the outset, the ALJ noted that she had not notified Wipro of the proceedings in light of Gupta's earlier request that his identity remain confidential to the extent possible. Pl.'s Stmt. Of Facts ¶ 23; A.R. 219. The ALJ found that Gupta was entitled to request a hearing because, under 20 C.F.R. § 655.806(b), the Administrator should have issued a post-investigation determination letter after accepting Gupta's claim for investigation, which provides an interested party with the opportunity to request a hearing. Pl.'s Stmt. Of Facts ¶ 24; A.R. 219–20. However, given that Gupta had requested a hearing, the ALJ concluded that Gupta was not prejudiced by the Administrator's failure to issue a determination letter. Pl.'s Stmt. Of Facts ¶ 25; A.R. 228.

Reiterating that she had construed the Administrator's response to her November 3, 2010 order to show cause as a motion for summary decision, the ALJ reviewed the record and determined that the Administrator was entitled to summary decision. Pl.'s Stmt. Of Facts ¶ 26; A.R. 229. First, the ALJ concluded that Gupta's aggrieved worker complaint under 20 C.F.R. § 655.805(a)(2) was

---

[8] 20 C.F.R. § 655.807 sets forth how someone who is not an "aggrieved party" may allege H-1B LCA violations and how such allegations will be processed.

[9] Although Gupta states that his claim should be considered on the fourth basis "on behalf of an existing H-1B worker," upon review of Gupta's motion and subsequent argument on this issue, Gupta appears to be asserting the claim as an aggrieved party on his own behalf. *See, e.g.*, A.R. 139.

untimely, as Gupta failed to file it within twelve months of Wipro's most recent allegedly unlawful deduction from his pay and because Gupta was not entitled to equitable tolling. Govt.'s Stmt. Of Facts ¶ 27; A.R. 229. Second, the ALJ found that Gupta was not an aggrieved competitor under 20 C.F.R. § 655.715, because "the regulation does not define an aggrieved party as a 'potential or future competitor' but rather, quite plainly, as a competitor." A.R. 231. Finally, the ALJ decided that she did not have the authority to review Gupta's assertion that his complaint should be considered under 20 C.F.R. 807 as a non-aggrieved "credible information source" complaint, because "the regulation specifically states that no hearing is available from a decision by an Administrator declining to refer [such] allegations to the Secretary [of Labor]. The Administrator's discretion in this area is plenary and nonreviewable."[10] A.R. 232.

Gupta appealed the ALJ's dismissal order to the DOL's Administrative Review Board ("ARB"). A.R. 539. On May 9, 2011, Gupta moved before the ARB to amend the dates of his employment in his complaint.[11] A.R. 484–493. On August 11, 2011, the ARB remanded the case,

---

[10] In a footnote, the ALJ also addressed Gupta's argument that his complaint should be considered as one filed by a "worker" in a specialty occupation. The ALJ found that "the term 'worker' equates to 'employee' [under 20 C.F.R. § 715], and that [Gupta's] complaint as a former employee of [Wipro] is encompassed in its listing of 'worker' as a type of aggrieved party." Because the 12 month limitations period in 20 C.F.R. § 806 "relates to all complaints by any aggrieved party," the ALJ found that Gupta's "attempt to carve out a separate category of aggrieved party by claiming that he also qualifies because he is (or was) a 'worker' in a specialty industry must fail." A.R. 231 n.12.

[11] For the first time in the record, Gupta argued that the dates of his employment should extend until June 10, 2008, the day his H-1B visa expired, instead of until March 31, 2006, the date Gupta had stated he had stopped working for Wipro. Gupta argued that he had not resigned from the services of Wipro in the USA in March 2006; rather, he had only resigned from the services of Wipro in India. A.R. 488–90. Therefore, Gupta argued, the statute of limitations on his claim began to run in June 2008, making his complaint timely. A.R. 491.

It follows from Gupta's attempted amendment that if Gupta was never terminated from Wipro's employment and was instead placed in nonproductive status, Wipro may have been liable for any failure to pay wages during Gupta's time in nonproductive status. See 20 C.F.R. § 655.731(c)(7).

holding that due process required the ALJ to give Wipro an opportunity to participate in the proceedings, notwithstanding Gupta's request that the matter remain confidential to the extent possible. Pl.'s Stmt. Of Facts ¶ 32; A.R. 544. The remand order instructed the ALJ to "conduct the proceedings on remand in the manner she believes appropriate . . . ." Govt.'s Stmt. Of Facts ¶ 33; A.R. 545.

On August 30, 2011, the ALJ acknowledged receipt of the ARB's remand order and (1) directed the Administrator and Gupta to provide to Wipro their submissions filed with the DOL and (2) authorized Wipro to respond to Gupta's complaint. A.R. 289. On or around November 4, 2011, Wipro submitted a letter response in the ALJ proceeding that stated that Wipro "affirms its agreement" with the ALJ's March 28, 2011 Decision and Order, that the DOL had "satisfactorily resolved [Gupta's] grievances against [Wipro] following a detailed investigation, and that Wipro "now considers this matter closed." Pl.'s Stmt. Of Facts ¶ 45; Wipro's Letter Response dated Nov. 4, 2011. Gupta responded and submitted two post-remand exhibits, including (1) a pay stub and W-2 form showing Gupta's earnings in March 2008; (2) a copy of Gupta's labor application from June 14, 2005 through June 10, 2008; and (3) a declaration from Gupta. *See* A.R. 548.

On January 25, 2012, the ALJ issued a decision and order on remand. A.R. 553. The ALJ declined to address any newly raised issues and concluded that the scope of her decision on remand was limited to the issue originally before her. A.R. 550. The ALJ thus denied Gupta's motions requesting the amendment of the dates of his employment and issuance of an order to show cause why summary decision for Gupta should not be granted based on Wipro's apparent failure to establish Gupta's bona fide termination.[12] A.R. 552. The ALJ also admitted the post-remand

---

[12] On August 15, 2011, Gupta "renewed" his motion to amend the dates of his employment with Wipro, this time moving in front of the ALJ. A.R. 272.

exhibits filed by Gupta. A.R. 551. Reviewing the record, the ALJ concluded that the evidence still reflected that Gupta's aggrieved worker complaint was untimely, given that March 2008, the date of Gupta's most recent paycheck from Wipro, preceded Gupta's May 2009 complaint by more than twelve months. A.R. 553. The ALJ also found that the additional evidence did not support the merits of Gupta's claim; in that connection, the ALJ noted that the only deductions reflected in Gupta's March 2008 pay records were state and federal taxes, which the H-1B regulations plainly permit. A.R. 553; *see also* 20 C.F.R. 655.731(c)(9)(i).

On January 30, 2012, Gupta filed a Petition for Review with the ARB. A.R. 567. On February 29, 2012, the ARB gave notice of its intention to review the case. A.R. 586. By Order dated May 22, 2012, the ARB identified the issue under consideration. A.R. 596. On February 27, 2014, the ARB issued a Final Decision and Order affirming the ALJ's dismissal of Gupta's case. A.R. 737.

In the ARB's Final Decision and Order, the ARB found that the undisputed facts established that "Gupta's May and June 2009 complaints advanced the same, single type of violation: illegal deductions connected to the base salary earned in Gupta's home country." A.R. 735. First, regarding Gupta's claim of H-1B violations pertaining to his own wages, the ARB agreed with the ALJ that Gupta's claims as an aggrieved worker were time-barred. A.R. 736. In particular, the ARB found that the last allegedly illegal deductions made from his wages occurred on or before March 2006, which made his 2009 complaints over three years late. A.R. 736. The ARB also found that Gupta failed to present persuasive reasons to invoke equitable tolling. A.R. 736. Second, the ARB affirmed the ALJ's dismissal of Gupta's aggrieved competitor complaint as to the allegedly illegal deductions made from the wages of other H-1B workers at Wipro. A.R. 737. In that connection, the ARB found that the undisputed evidence, particularly Gupta's own admissions, demonstrated that Gupta was not Wipro's competitor and, thus, Gupta was not adversely affected

by the alleged violation. A.R. 737. Finally, the ARB held that the discretion to investigate credible source complaints lies with the WHD Administrator and other Labor Department officials, and that the regulations prohibit parties from appealing the Labor Department's refusal to exercise such discretion. A.R. 737.

On March 10, 2014, Plaintiff filed the present lawsuit in the Northern District of California, seeking judicial review of the ARB's final decision. On March 25, 2014, Plaintiff filed a "Complaint for Judicial Review of Final Agency Decision, and Declaratory and Injunctive Relief, INA Violations By Wipro," which the Court construes to be an Amended Complaint that not only (1) seeks judicial review of the ARB's final decision, but also asserts: (2) a claim of unauthorized deductions against Wipro, and (3) claims for declaratory relief and a preliminary injunction.[13] On June 24, 2014, the case was transferred to this Court. Thereafter, Wipro, the Government, and Gupta all moved for summary judgment on all of Plaintiff's claims.

## I.      Standard of Review

Judicial review of an agency's final determination is governed by the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 *et seq.,* rather than the typical summary judgment standard. Pursuant to Section 706(2), a reviewing court must

hold unlawful and set aside agency action, findings, and conclusions found to be-

---

[13] For the sake of precision, Gupta's Amended Complaint specifically contains fourteen counts, each titled as follows: (1) Count One, "Due process violations and related issues," (2) Count Two, "Nature of Gupta's Complaint—unauthorized deductions and failure to pay wages," (3) Count Three, "Did the agency properly deny Gupta's Motion for leave to amend," (4) Count Four, "Timeliness of DOL complaints," (5) Count Five, "Equitable Tolling and Estoppel," (6) Count Six, "Aggrieved Party and Interested Status," (7) Count Seven, "Declaratory Relief," (8) Count Eight, "Unauthorized deductions by Wipro," (9) Count Nine, "Payment of required wages by Wipro," (10) Count Ten, "Preliminary Injunctive (Equitable) Relief," (11) Count Eleven, "Compensatory damages," (12) Count Twelve, "Punitive Damages," (13) Count Thirteen, "Pre-judgment and post-judgment Interest," and (14) Count Fourteen, "Litigation Costs and Expenses." Pl.'s Am. Compl.

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2). Thus, under the APA, the function of the reviewing court is limited. A reviewing court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413-15 (1971), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99 (1977). Rather, "the court's inquiry is limited to determining whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made,' *Baltimore Gas & Elec. Co. v. Natural Res. Defense Counsel, Inc.,* 462 U.S. 87, 105 (1983), and 'whether there has been a clear error of judgment.' *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)." *Sierra Club v. United States Army Corps of Engineers,* No. 05-CV1742, 2005 WL 2090028 at *8 (Aug. 29, 2005). Moreover, "substantial deference is given to an agency's interpretation of statutes it administers, and particularly to its own regulations, so long as the interpretation is a permissible one." *Id.* (citations omitted). However, "[a]n agency decision based on an issue of law that does not "implicate[ ] agency expertise in a meaningful way" . . . is subject to de novo review. *Cyberworld Enter. Technologies, Inc. v. Napolitano*, 602 F.3d 189, 196 (3d Cir. 2010) (citing *Sandoval v. Reno*, 166 F.3d 225, 239–40 (3d Cir. 1999)).

As a threshold matter, the Court's direct review is limited to the ARB's Final Decision and Order. 5 U.S.C.A. § 704 ("Agency action made reviewable by statute and final agency action for

11

which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). Further, "an agency's decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

## II.  Analysis

### a.  Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.,* allows the admission of aliens into the United States to perform services in a specialty occupation that meets specific requirements of the Act.[14] The INA provides, in pertinent part, that a "nonimmigrant" is an alien "who is coming temporarily to the United States to perform services in a specialty occupation . . . and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 1182(n)(1) . . . ." 8 U.S.C. § 1101(a). Nonimmigrants thus defined may therefore be admitted upon a determination by the Attorney General that the pertinent requirements are satisfied. Pursuant to the applicable regulations, a prospective nonimmigrant employer is required to file with the DOL, and obtain DOL's certification of, a "LCA". 20 C.F.R. § 655.700(b)(1). After obtaining DOL certification of the LCA, the employer is required to submit a nonimmigrant visa petition, together with a certified LCA, to the United States Citizenship and Immigration Services of the Department of Homeland Security (the "DHS") for approval. 20 C.F.R. § 655.700(b)(2). The determination of whether the H-1B visa should be issued is delegated to the DHS and is governed by DHS

---

[14] A "specialty occupation" is defined under the Act as requiring the application of highly specialized knowledge and the attainment of a bachelor's degree or higher. See 8 U.S.C. § 1184(i)(1).

regulations. *See* 20 C.F.R. § 655.700(b)(2)-(3). Pursuant to 8 U .S.C. § 1182(n)(2)(A), the Secretary of the DOL (the "Secretary") has the authority to establish the process for receipt, investigation, and disposition of complaints in connection with a petitioner's failure to meet a condition specified in an LCA or a petitioner's misrepresentation of material facts in an LCA. Through its regulatory scheme, the DOL delegates enforcement authority to the DOL Administrator. Pursuant to 20 C.F.R. § 655.805, the Administrator is granted the authority to investigate, among other things, the failure of an employer to pay required wages. Further, the DOL is authorized to determine whether civil monetary penalties may be imposed for willful violations. 20 C.F.R. § 655.805(b); 20 C .F.R. § 655.810(b).

Pursuant to 20 C.F.R. § 655.731(c)(9), employers are authorized to take three general types of deductions from an H-1B employee's pay.[15] 20 C.F.R. § 655.731(c)(10), (c)(11), and (c)(12) relate to unauthorized deductions.[16]

---

[15] "Authorized deductions," for purposes of the employer's satisfaction of the H–1B required wage obligation, means a deduction from wages in complete compliance with one of the following three sets of criteria (i.e., paragraph (c)(9)(i), (ii), or (iii))—

(i) Deduction which is required by law (e.g., income tax; FICA); or

(ii) Deduction which is authorized by a collective bargaining agreement, or is reasonable and customary in the occupation and/or area of employment (e.g., union dues; contribution to premium for health insurance policy covering all employees; savings or retirement fund contribution for plan(s) in compliance with the Employee Retirement Income Security Act, 29 U.S.C. 1001, et seq.), except that the deduction may not recoup a business expense(s) of the employer (including attorney fees and other costs connected to the performance of H–1B program functions which are required to be performed by the employer, e.g., preparation and filing of LCA and H–1B petition); the deduction must have been revealed to the worker prior to the commencement of employment and, if the deduction was a condition of employment, had been clearly identified as such; and the deduction must be made against wages of U.S. workers as well as H–1B nonimmigrants (where there are U.S. workers); or

(iii) Deduction which meets the following requirements:

(A) Is made in accordance with a voluntary, written authorization by the employee (Note to paragraph (c)(9)(iii)(A): an employee's mere acceptance of a job which carries a deduction as a condition of employment does not constitute voluntary authorization, even if such condition were stated in writing);

(B) Is for a matter principally for the benefit of the employee (Note to paragraph (c)(9)(iii)(B): housing and food allowances would be considered to meet this "benefit of employee" standard, unless the employee is in travel status, or unless the circumstances indicate that the arrangements for the employee's housing or food are principally for the convenience or benefit of the employer (e.g., employee living at worksite in "on call" status));

(C) Is not a recoupment of the employer's business expense (e.g., tools and equipment; transportation costs where such transportation is an incident of, and necessary to, the employment; living expenses when the employee is traveling on the employer's business; attorney fees and other costs connected to the performance of H–1B program functions which are required to be performed by the employer (e.g., preparation and filing of LCA and H–1B petition)). (For purposes of this section, initial transportation from, and end-of-employment travel, to the worker's home country shall not be considered a business expense.);

(D) Is an amount that does not exceed the fair market value or the actual cost (whichever is lower) of the matter covered and

(E) Is an amount that does not exceed the limits set for garnishment of wages in the Consumer Credit Protection Act, 15 U.S.C. 1673, and the regulations of the

_____

Secretary pursuant to that Act, 29 CFR part 870, under which garnishment(s) may not exceed 25 percent of an employee's disposable earnings for a workweek.

20 C.F.R. 655.731(c)(9) (internal notes omitted).

[16] A deduction from or reduction in the payment of the required wage is not authorized (and is therefore prohibited) for the following purposes (i.e., paragraphs (c)(10)(i) and (ii)):

(i) A penalty paid by the H–1B nonimmigrant for ceasing employment with the employer prior to a date agreed to by the nonimmigrant and the employer.

(A) The employer is not permitted to require (directly or indirectly) that the nonimmigrant pay a penalty for ceasing employment with the employer prior to an agreed date. Therefore, the employer shall not make any deduction from or reduction in the payment of the required wage to collect such a penalty.

(B) The employer is permitted to receive bona fide liquidated damages from the H–1B nonimmigrant who ceases employment with the employer prior to an agreed date. However, the requirements of paragraph (c)(9)(iii) of this section must be fully satisfied, if such damages are to be received by the employer via deduction from or reduction in the payment of the required wage.

(C) The distinction between liquidated damages (which are permissible) and a penalty (which is prohibited) is to be made on the basis of the applicable State law. In general, the laws of the various States recognize that liquidated damages are amounts which are fixed or stipulated by the parties at the inception of the contract, and which are reasonable approximations or estimates of the anticipated or actual damage caused to one party by the other party's breach of the contract. On the other hand, the laws of the various States, in general, consider that penalties are amounts which (although fixed or stipulated in the contract by the parties) are not reasonable approximations or estimates of such damage. The laws of the various States, in general, require that the relation or circumstances of the parties, and the purpose(s) of the agreement, are to be taken into account, so that, for example, an agreement to a payment would be considered to be a prohibited penalty where it is the result of fraud or where it cloaks oppression. Furthermore, as a general matter, the sum stipulated must take into account whether the contract breach is total or partial (i.e., the percentage of the employment contract completed). In an enforcement proceeding under subpart I of this part, the Administrator shall determine, applying relevant State law (including consideration where appropriate to actions by the employer, if any, contributing to the early cessation, such as the employer's constructive discharge of the nonimmigrant or non-compliance with its obligations under the INA and its regulations) whether the payment in question constitutes liquidated damages or a penalty.

(ii) A rebate of the $500/$1,000 filing fee paid by the employer, if any, under section 214(c) of the INA. The employer may not receive, and the H–1B nonimmigrant may not pay, any part of the $500 additional filing fee (for a petition filed prior to December 18, 2000) or $1,000 additional filing fee (for a petition filed on or subsequent to December 18, 2000), whether directly or indirectly, voluntarily or involuntarily.

b. *Plaintiff's Claims*

i. *Count One: "Due Process Violations and Other Issues"*

Plaintiff's contention that the ARB erred in dismissing his ALJ Complaint forms the crux of Gupta's Amended Complaint here. In Count One of his Amended Complaint, Plaintiff argues that the DOL committed multiple procedural violations at the various stages of the adjudication of his complaint.[17]

The DOL's alleged procedural violations are as follows: (1) "[t]he ARB's finding that[] '[t]he Wage and Hour Division . . . ultimately found no reasonable cause to investigate either complaint' has failed to identify any regulatory or statutory basis for the 'ultimate' finding of the WHD," Pl.'s Br. at 11 (internal citations omitted); (2) "the ALJ proceedings did not conform with the requirements of 20 C.F.R. 655.835 that prescribes the procedure in LCA cases," which prohibited the factual development of the record regarding Plaintiff's employment record, among other matters, Pl.'s Br. at 12; (3) the ARB erroneously added the Administrator as an additional Defendant in its "Briefing Order," and "[a]s a result the focus of [the] ARB shifted on whether Plaintiff is an aggrieved party [and] timeliness and other issues already waived or forfeited by

---

Thus, no deduction from or reduction in wages for purposes of a rebate of any part of this fee is permitted. Further, if liquidated damages are received by the employer from the H–1B nonimmigrant upon the nonimmigrant's ceasing employment with the employer prior to a date agreed to by the nonimmigrant and the employer, such liquidated damages shall not include any part of the $500/$1,000 filing fee (see paragraph (c)(10)(i) of this section). If the filing fee is paid by a third party and the H–1B nonimmigrant reimburses all or part of the fee to such third party, the employer shall be considered to be in violation of this prohibition since the employer would in such circumstances have been spared the expense of the fee which the H–1B nonimmigrant paid.

20 C.F.R. 755.731(c)(10) (internal notes and citations omitted).

[17] Plaintiff titles Count One "Due process violations and related issues." Am. Compl.

Wipro instead of issues identified in the Briefing Order," Pl.'s Br. at 13; (4) "any suggestion that the Administrator ultimately found no reasonable cause to investigate and did not issue [a] Determination is inconsistent with the administrative record, and Wipro and [the] Administrator's stipulations," Pl.'s Br. at 14; (5) the Final Decision and Order incorrectly states that Wipro was never notified of the proceedings before the ALJ because, according to Plaintiff, "Wipro was served and it received a copy of Gupta's 'ALJ Complaint' on Sept. 1, 2010 but it did not enter an appearance voluntarily," Pl.'s Br. at 14; and (6) the ARB's Final Decision and Order states that the WHD "issued a letter finding reasonable cause to investigate the June 2009 complaint," but "the ALJ correctly noted that the WHD complaint was initiated in May 2009" and the WHD did not challenge the ALJ's finding. Pl.'s Br. at 15. As a result of these errors, Plaintiff argues that his case should be remanded to the DOL for a new decision.

In its opposition to Plaintiff's motion for summary judgment and in its own motion for summary judgment, the Government appears to construe Count One to be a general argument that Gupta "was denied the opportunity to develop his period of employment with Wipro including the date of the termination of his employment." Govt.'s Opp. Br. at 10. The Government does not respond to the specifics of Plaintiff's allegations in Count One; rather, the Government contends that "the Court's review is limited to the administrative record." and generally argues that, pursuant to the administrative record, (1) the ARB correctly concluded that the "worker" claim was untimely and that there was no ground for equitable tolling, (2) Plaintiff did not fit the definition of an aggrieved "competitor," and (3) the Administrator's decision not to initiate an investigation based on the information Plaintiff provided as a non-aggrieved "credible source" pursuant to 20 C.F.R. § 655.807 was unreviewable. Therefore, the Government argues, summary judgment should be granted in the Government's favor. Govt.'s Br. at 11–12.

Contrary to the Government's interpretation of Count One of Plaintiff's Amended Complaint as a generic assertion that Plaintiff was not given the opportunity to fully develop the factual record, Plaintiff appears to specifically assert that the ARB's errors amounted to a constitutional procedural due process violation.[18] To the extent that Plaintiff is asserting a constitutional violation in Count One, the Court's "review of . . . constitutional questions is more searching" than a review of an agency's final decision that does not raise constitutional questions." *CBS Corp. v. F.C.C.*, 663 F.3d 122, 137 (3d Cir. 2011). The Third Circuit has established that "a plaintiff . . . who seeks to establish a procedural due process claim must demonstrate that '(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)). "The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).

Here, Plaintiff does not identify a constitutionally protected liberty or property interest of which he was deprived. *See generally* Am. Compl; Pl.'s Br. The Court is thus unable to discern a potential constitutionally protected interest, an essential element of a procedural due process claim. *See, e.g.*, *Bellocchio v. New Jersey Dep't of Envtl. Prot.*, No. CIV.A. 13-6244 JBS/J, 2014 WL 1464814 (D.N.J. Apr. 15, 2014) *aff'd*, No. 14-1984, 2015 WL 1345663 (3d Cir. Mar. 26, 2015) (denying a procedural due process claim because "Plaintiffs have not identified a protected

---

[18] However, elsewhere in Count One, Plaintiff appears to be alleging that the procedural violations Plaintiff identifies are actually errors to be evaluated under the arbitrary and capricious standard. *See* Am. Compl. Count I.

property interest on which to base a due process violation"). Even if Plaintiff had identified such an interest, the errors of which Plaintiff complains are minor and do not appear to deprive Plaintiff of notice or an opportunity to be heard; nearly all of the ARB's errors that Plaintiff identifies, to the extent they are true errors, are minor mistakes in recounting the procedural history of the case and do not impact Plaintiff's receipt of notice or his opportunity to be heard. The one error of which Plaintiff complains that potentially impacts Plaintiff's opportunity to be heard is Plaintiff's contention that "the ALJ proceedings did not conform with the requirements of 20 C.F.R. 655.835 that prescribes the procedure in LCA cases." Pl.'s Br. at 12. 20 C.F.R. § 655.835 provides, in pertinent part:

> The administrative law judge may prescribe a schedule by which the parties are permitted to file a prehearing brief or other written statement of fact or law. Any such brief or statement shall be served upon each other party in accordance with § 655.830 of this part. Posthearing briefs will not be permitted except at the request of the administrative law judge. When permitted, any such brief shall be limited to the issue or issues specified by the administrative law judge, shall be due within the time prescribed by the administrative law judge, and shall be served on each other party in accordance with § 655.830 of this part.

*Id.* § 655.835. However, contrary to Plaintiff's assertions, § 655.835 does not mandate that the ALJ provide the parties an opportunity to develop the factual record relating to the dates of Plaintiff's employment with Wipro beyond the allegations contained in Plaintiff's complaint; rather, § 655.835 merely provides the ALJ discretionary authority to request pre- or post-hearing briefs or written statements. Thus, any failure on the part of the ALJ to request additional evidence did not violate § 655.835, and Plaintiff fails to demonstrate how such a failure would result in a due process violation. In any event, Plaintiff submitted, and the ALJ admitted, subsequent evidence provided by Plaintiff relating to Plaintiff's work for Wipro in 2008, and the ALJ found that the subsequent evidence did not change the outcome of the ALJ's analysis because (1) the ALJ found that Plaintiff had only worked for Wipro in 2008 during the month of March, which meant

Plaintiff's May/June 2009 complaints were still outside the one-year statute of limitations, and (2) the March 2008 pay stubs did not reflect any illegal wage deductions. A.R. 548–56. Further, Plaintiff received opportunities to argue his claim, and was given several opportunities to provide further briefing or information, in front of the WHD, the ALJ, and the ARB, and successfully petitioned for the Administrator to provide reasoning for its ultimate decision that no reasonable cause existed to pursue Plaintiff's claim. *See, e.g.*, *Adamo v. Dillon*, 539 F. App'x 51, 54 (3d Cir. 2013).

Further, to the extent that Count One advances the argument that the alleged procedural failures outlined in the Count necessitates remand under the arbitrary and capricious review standard, as opposed to constituting a due process violation, the Court finds that Plaintiff has not shown that the complained-of errors affected the substance of the ALJ's analysis such that would require remand. *Prometheus Radio Project v. F.C.C.*, 373 F.3d 372, 390 (3d Cir. 2004) ("We will . . . 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'") (quoting *Motor Vehicle Mfs Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). Thus, Plaintiff's motion for summary judgment on Count One of his Amended Complaint must fail and the Government's motion for summary judgment on Count One is granted.

### ii. *Count Two: Nature of Plaintiff's DOL Complaint*

In Count Two of Plaintiff's Amended Complaint, Plaintiff argues that the ARB "engaged in a hyper-technical reading of [Plaintiff's] WHD complaint and erroneously relied on the WHD complaint to dismiss [Plaintiff's ALJ] complaint." Pl.'s Br. at 15. Gupta goes on to argue that while the ALJ "properly construed Gupta's [ALJ] complaint as constituting a complaint of failure to pay wages," the ARB did not "discuss[] any reasons for overlooking the ALJ[s] description of Gupta's complaint . . . and erred in describing the WHD complaint as only constituting

20

unauthorized deductions." Pl.'s Br. at 18. It appears that Plaintiff is arguing that the ARB erred in construing Plaintiff's complaint as merely encompassing a claim for unauthorized deductions, when Plaintiff's complaint also purportedly contained an allegation that Wipro did not pay required wages to Plaintiff during some months when Plaintiff was on Wipro's H-1B visa.[19] The Government responds two Count Two in the same way that it analyzed Count One: by lumping Counts One through Four and Count Six together as a general claim and arguing that Plaintiff's complaint as an aggrieved worker was time-barred. *See* Govt.'s Opp. Br. at 11, 13.

The textual support in the Administrative Record for Plaintiff's position is as follows: First, there is Plaintiff's "Motion for Order Setting Forth Discovery and Briefing Schedule and Motion for Hearing and prehearing Order," dated August 26, 2010, in which Plaintiff claims (1) to have "made additional allegations of H-1B violations by [Wipro] including non-payment of H-1B required wages during his authorized period of employment" and (2) that "by email dated January 31, 2010," Ramon Huaracha ("Huaracha"), a Regional H-1B Coordinator, informed Plaintiff "that the information will be included in [Plaintiff's] original complaint and that the complaint will be set up for investigation." A.R. 31–36. Second, there is Huaracha's email dated January 31, 2010, which Plaintiff attaches to his August 26, 2010 motion, in which Huaracha thanks Plaintiff for the additional (unspecified) information Plaintiff has provided and states that the information would

---

[19] Pursuant to the INA, an employer must not only pay specified wages for work actually performed by the H-1B worker, the employer must also pay full-time wages for certain specified nonproductive periods where the nonproductive period is due to a decision by the employer. 8 U.S.C. § 1182(n)(2)(C)(vii). If the Secretary finds, after notice and an opportunity for a hearing, that an employer has failed to pay the wages required, the Secretary has the authority to order the employer to provide back wages to the aggrieved employee. 8 U.S.C. § 1182(n)(2)(D).

The issue of payment for non-productive periods is also addressed in DOL regulations governing the determination, payment and documentation of the required wages. *See, e.g.*, 20 C.F.R. § 655.731(c)(7).

be added to Plaintiff's complaint. A.R. 51. Third, Plaintiff's motions for leave to amend the dates of his employment, dated May 9, 2011[20] and August 15, 2011, contain specific allegations that there was no bona fide termination of Plaintiff's employment with Wipro and that Wipro improperly failed to pay Plaintiff between April 2006 and June 10, 2008 (with the exception of March 2008), as does Plaintiff's November 3, 2011 "Motion to Admit Evidence in Support of (Renewed) dates Motion." A.R. 272–282, 366–372, 484–493.

However, the record shows that while Plaintiff moved multiple times to amend the dates of his employment during the ALJ and ARB proceedings, Plaintiff never specifically moved to amend his DOL complaint to include a claim against Wipro for failure to pay wages during nonproductive status.[21] As the ALJ's January 25, 2012 decision notes, notwithstanding Plaintiff's motion to amend the dates of his employment with Wipro, Plaintiff's initial complaint "alleged *only* that Wipro was taking unauthorized deductions," and nothing in the record reveals that Plaintiff's complaint was properly amended to include the newly-raised allegations of failure to pay wages during nonproductive status. A.R. 553 (emphasis in original). Further, even if Plaintiff had properly amended his complaint to include a claim for failure to pay wages, there is no evidence in the record that the WHD took any action to investigate Plaintiff's added claim, precluding judicial review. *In re: Watson*, 910 F. Supp. 2d 142, 147 (D.D.C. 2012) ("Because the challenged agency action here was discretionary—namely, the decision by Labor's Wage and Hours Division not to investigate [the plaintiff's] complaints—he cannot state a claim under . . . the APA, which

---

[20] Plaintiff's initial motion to amend the dates of his employment, dated May 9, 2011, was filed before the Administrative Review Board. A.R. 484.

[21] To the extent Plaintiff points to Huaracha's January 31, 2010 email as evidence that he amended his DOL complaint to include those allegations, the Court is unable to find that Plaintiff indeed amended his complaint in that way, as Huaracha does not specify what information was added to Plaintiff's complaint.

'explicitly excludes from judicial review those agency actions that are 'committed to agency discretion by law.'" (quoting *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C.Cir. 2011) (quoting 5 U.S.C. § 701(a))); *see also* 20 C.F.R. § 655.806(a)(1) (stating that under § 1182(n)(2), "[n]o hearing or appeal . . . shall be available where the Administrator [of WHD] determines that an investigation on a complaint is not warranted."); *Watson v. Chief Admin. Law Judge*, No. 10-40411, 2010 WL 4033991, at *2 (5th Cir. Oct. 15, 2010).

Therefore, the ARB's failure to consider Plaintiff's informal allegations in its Final Decision and Order was not arbitrary, capricious, or an abuse of discretion. Plaintiff's motion for summary judgment fails on Count Two, and the Government's motion is granted.[22]

### iii. Count Three: Denial of Plaintiff's Motion to Amend his DOL Complaint

In Count Three of Plaintiff's Amended Complaint, Plaintiff argues that the ALJ erred in denying Plaintiff leave to amend the dates of Plaintiff's employment with Wipro in his ALJ complaint. The record reflects that on May 9, 2011, Plaintiff first filed in front of the ARB for leave to amend the dates of his employment to extend to June 10, 2008. A.R. 484. On August 15, 2011, Plaintiff renewed his motion for leave to amend the dates of his employment, this time in front of the ALJ, and in November 3, 2011, Plaintiff submitted post-remand evidence. A.R. 272, 366. In her January 25, 2012 decision, the ALJ denied Plaintiff leave to amend the dates of his employment with Wipro. A.R. 551. The ALJ noted that she had not previously addressed Plaintiff's motion, because it was received by her office on August 30, 2011, the same date that she issued her "Order Acknowledging Receipt of Remand from Administrative Review Board,"

---

[22] The Court makes no finding about the viability of Plaintiff's allegations that Wipro failed to pay Plaintiff wages during his alleged non-productive status, either in terms of timeliness or the merits. The Court merely notes that bringing such a claim here, in the first instance, is procedurally improper.

and she was unable to review Plaintiff's motion before issuing her Order. *Id.* The ALJ found that "it is proper to limit [her] decision on remand to the issues that were before me at the time I initially adjudicated this matter" and that Plaintiff's motion "does not relate to these issues, but rather seeks to interject new issues." *Id.*

However the ALJ did admit post-remand evidence submitted by Plaintiff, consisting of (1) an earnings statement from Wipro for the period 03/01/2008 to 3/31/2008 in the amount of $5,323.00, (2) a W-2 form issued to Plaintiff, reporting income of $5,323.00, (3) a copy of an LCA for the period 06/14/2006 to 06/10/2008 for Wipro, and (4) Plaintiff's declaration, in which Plaintiff states that Wipro "could but did not present any argument or submitted [sic] any material in support of bona fide termination of [Plaintiff's] employment prior to 06/10/2008 – end [sic] of authorized period of employment approved by USCIS." A.R. 550–51. Accordingly, the ALJ supplemented her findings of fact to take the new evidence into account.[23] A.R. 552. However, the ALJ further found that Plaintiff's "2008 employment with Wipro does not establish the timeliness of Gupta's complaint that is before me on review," because even though Plaintiff was employed by Wipro in March 2008, Plaintiff's May 2009 complaint was still untimely. A.R. 552. Not only was the complaint filed more than 12 months from the date of Plaintiff's last earnings statement from Wipro, but the 2008 earnings statement reflected only authorized deductions for state and federal taxes, so Plaintiff's claim still began to run at the end of March 2006. [A.R. 552–53]. The ALJ further maintained that Plaintiff's post-remand evidence was inapposite because Plaintiff's "initial complaint alleged *only* that Wipro was taking unauthorized deductions," seemingly alluding to and

---

[23] The ALJ found that (1) "Wipro paid wages to Gupta in March 2008, pursuant to an LCA authorizing employment through June 10, 2008," (2) "Wipro deducted federal and state taxes from Gupta's wages in March 2008, but did not take any other deductions from his wages," and (3) "[t]he wages Wipro paid in March 2008 were the only wages Wipro paid to Gupta in that calendar year." A.R. 552.

dismissing Plaintiff's additional, informal allegations about the lack of a bona fide termination and Wipro's non-payment of wages during Plaintiff's alleged nonproductive status. A.R. 553.

The ARB specified in its Identification of the Issues to be Considered and Order Establishing Briefing Schedule that the ARB intended to review "[w]hether the ALJ properly limited her decision on remand to those issues that were before her when she issued her original Decision and Order Granting Summary Decision; And Dismissing Case." Ultimately, the ARB's Final Decision and Order did not explicitly review the ALJ's denial of Plaintiff's motion to amend, though the ARB affirmed the ALJ's dismissal of Plaintiff's complaint.

In any event, the Court does not find that the ALJ acted in an arbitrary or capricious manner in denying Plaintiff's request to amend, especially because the ALJ did admit and consider Plaintiff's post-remand exhibits which related to Plaintiff's 2008 employment with Wipro. As I stated *supra*, it was not error for either the ARB, or the ALJ, to fail to consider Plaintiff's additional allegations about Wipro's non-payment of wages during Plaintiff's alleged nonproductive status, because the allegations were not raised in a procedurally proper fashion. Thus, the denial of Plaintiff's motion to amend did not impact Plaintiff's only properly-raised claim. Accordingly, the Court denies Plaintiff's motion for summary judgment, and grants the Government's motion for summary judgment, on Count Three.

### iv.   *Count Four: Timeliness of Plaintiff's DOL Complaints*

In Count Four of Plaintiff's Amended Complaint, Plaintiff asserts against the Government and Wipro that (1) "Wipro waived or forfeited the affirmative defense of "timeliness" during [the] administrative proceedings," and (2) Plaintiff's complaint was in fact timely.

The Government responds that "[i]t is of no import that the WHD and ALJ addressed the timeliness defense, as there was no requirement that the defense be addressed or even raised by

Wipro." Govt.'s Opp. Br. at 13 n.6. Further, the Government contends that Plaintiff's complaint is not timely, because the unauthorized deductions of which he initially complained took place more than a year after Plaintiff filed his complaint.

Under the DOL's regulations for enforcement of an H-1B labor condition application, "[a] complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA." 20 C.F.R. § 655.806.

Timeliness was first raised in the record on December 2, 2010, when the Administrator responded to the ALJ's order to show cause by submitting a letter-brief, in which the Administrator detailed why the WHD initially found reasonable cause to pursue Plaintiff's complaint upon Plaintiff's representations that he was a business competitor of Wipro. The Administrator explained that "[a] complaint must be filed within twelve months after the latest date on which the alleged violation was committed. Mr. Gupta does not qualify as an aggrieved worker because any violations that may have been committed against him in that capacity happened more than twelve months before the submission of his complaint to the Wage and Hour . . . Office in June 2009."[24] A.R. 68. The ALJ found that "[i]t is uncontroverted that [Plaintiff's] complaint was untimely, as it was made more than three years after his employment with [Wipro] ended. Thus, [Plaintiff's]

---

[24] The Administrator further explained that Plaintiff could not "invoke competitor status because he did not in fact run a business in competition with Wipro," though the WHD had initially issued a "reasonable cause" letter because at the time, the WHD believed Plaintiff may have had aggrieved party status as a business competitor. A.R. 68–69.

complaint on his own behalf may be dismissed, based on untimeliness," and no equitable tolling would be applied.  A.R. 229–30.

Wipro's involvement in the proceedings only began on August 30, 2011, after the ARB remanded the case due to the ALJ's erroneous decision not to provide notice of the proceedings to Wipro, and the ALJ then provided notice and an opportunity to respond to Wipro. A.R. 289. On November 4, 2010, Wipro responded by summarily agreeing with the Administrator's position. Nov. 4, 2011 Response by Wipro. Plaintiff argues that Wipro was on notice of the proceedings because Wipro "received a copy of the 'ALJ Complaint' in Sept. 2010." Pl.'s Br. at 21. However, as the ARB noted in its August 11, 2011 remand decision, "the nature and extent of [Wipro's] 'participation,' if any, is unclear given the ALJ's statement that as of the date of her [March 28, 2011 opinion, Wipro] 'has not been served with notice of these[] proceedings.'" A.R. 552; *see also* A.R. 219. "The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed . . . Consistent with the purpose of Rule 8(c) [of the Federal Rules of Civil Procedure], courts require that defendants assert a limitations defense as early as reasonably possible." *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002).  Thus, even if the Administrator could not, on its own, raise the defense of timeliness—which Plaintiff asserts without legal support[25]—the Court finds that, based on the administrative record, Wipro raised the issue of timeliness at the first reasonably possible opportunity, in its November 2011 response to the ALJ in which it wholly endorsed the

---

[25] Wipro and the Government respond by stating, also without legal support, that the Administrator may raise the issue of timeliness instead of the respondent in ALJ proceedings such as these.

Administrator's position. Thus, the ARB's failure to find that Wipro forfeited or waived the defense of timeliness is not arbitrary, capricious, or an abuse of discretion.

As to whether Plaintiff's complaint was actually untimely, the Court finds no evidence in the record to disturb the ARB's findings that

> [t]he ALJ clearly explained, based on the undisputed facts, that the last alleged 'illegal deduction' made from [Plaintiff's] wages occurred in or before March 2006. This makes [Plaintiff's] 2009 complaints late by multiple years . . . . Nor does it help Gupta to argue, as he has, that Wipro allegedly never properly terminated his employment based on his H-1B status as approved by the Department of Homeland Security through June 10, 2008. The fact remains that the last date of the alleged 'illegal deduction' violation pertaining to Gupta's wages occurred in or before March 2006. We thus affirm the ALJ's dismissal of Gupta's claim pertaining to his own wages.

A.R. 736–37.

Therefore, the Court holds that the ARB's finding that Plaintiff's complaint was untimely was not arbitrary or capricious. Given that Wipro was only invited to respond to Plaintiff's ALJ complaint after the ARB remanded the decision, and Wipro agreed with the Administrator's position that Plaintiff's complaint was untimely as an aggrieved worker, the Court does not find that the record reflects that Wipro waived its statute of limitations defense. And the Court does not find any evidence in the record to contradict the ARB and ALJ's findings that Plaintiff's 2009 complaint was untimely. Therefore, summary judgment on Count Four will be denied for Plaintiff and granted to Wipro and the Government.

### v.   Count Five: Equitable Tolling and Estoppel

In Count Five of Plaintiff's Amended Complaint, Plaintiff alternatively asserts against the Government and Wipro that if the Court finds that Plaintiff's complaint was untimely, equitable tolling should apply. Specifically, Plaintiff argues that "Wipro actively misled [Plaintiff] respecting the cause of action, by making [Plaintiff] sign a letter agreement, which included the unauthorized deduction as a condition of employment." Pl.'s Br. at 24. Plaintiff further argues that

"Wipro . . .  did not provide earnings statements to [Plaintiff] for several months during the authorized period of employment . . . . In the absence of earnings statements it is impossible to determine the cause of action with specificity—whether the shortfall in wages is due to unauthorized deduction[s] or failure to pay required wages." Pl.s' Br. at 25. Plaintiff also claims that equitable estoppel should apply. The administrative record reveals that the basis for Plaintiff's equitable tolling argument before the ALJ was Wipro's alleged failure to inform Plaintiff that the labor certification application would control the terms of Plaintiff's employment as an H-1B worker and not Wipro's employment agreement letter.[26] A.R. 18–19.

As the ARB has explained, "[e]quitable modification consists of equitable tolling, which focuses on the employee's excusable ignorance of an employer's discriminatory actions, and equitable estoppel, which examines the employer's conduct and the extent to which the employee has been induced to refrain from exercising her rights." *In the Matter of: Sandra Barrett, Complainant v. Shuttle America/Republic Airways, Respondent*, 2014 WL 884411, at *4 n.7. In *Sch. Dist. of City of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981), the Third Circuit identified three situations in which equitable tolling is appropriate: "(1) the defendant has actively misled the plaintiff respecting the cause of action, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." *Id.*; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005); *see also, e.g.*, *In the Matter of: Juan Carlos Lubary, Complainant v. El Floridita d/b/a Buenos Ayres Bar & Grill, Respondent*, ARB No: 10-137, 2012

---

[26] In fact, the letter cited by Plaintiff states that "[i]n the event of a conflict between this letter agreement and your Appointment Letter or Commitment, the terms of this letter shall govern." The letter does not state that the letter supersedes Plaintiff's LCA or the INA's provisions as they relate to the H-1B program. A.R. 18–20.

WL 1568642, at *4 (applying *Allentown* in the H-1B context). "[T]he principles of equitable

tolling . . . do not extend to garden-variety claims of excusable neglect. The remedy of equitable

tolling is extraordinary, and we will extend it only sparingly." *Jones v. United States*, 366 Fed.

App'x 436, 439 (3d Cir. 2010) (internal citations and quotation marks omitted).

The elements of equitable estoppel are as follows: "(1) a misrepresentation by another party;

(2) which she reasonably relied upon; (3) to her detriment." *Leese v. Adelphoi Vill., Inc.*, 516 F.

App'x 192, 194 (3d Cir. 2013); (quoting *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)).

The ALJ dealt with Plaintiff's equitable tolling argument in her March 28, 2011 decision, when

she stated that

> [t]he recognized exception [to the timeliness requirement] relates to the employer's
> actions in actively misleading the employee regarding the employee's right to seek
> redress under the [INA], not (as [Plaintiff] asserts) any misleading act by an employer
> in establishing the terms of the employer-employee relationship, which is at issue.
> Thus, it is the action of the employer pertaining to the employee's ability to pursue
> legal action, not the action of the employer in establishing the terms of the employer-
> employee relationship, which is at issue. [Plaintiff's] submissions are silent as to
> whether, if at all, [Wipro] misled him as to his right to file a complaint with the
> administrator . . . . Consequently, I conclude that [Plaintiff] has not established the
> eligibility for equitable tolling of the limitations period based on [Wipro's] actions.

A.R. 230 (citing *Hyman v. KD Res.*, ARB No. 09-076 (ARB: Mar. 31, 2010)). The ALJ went on to

note, in a footnote, that Plaintiff had not "asserted any facts relating to either of the other possible

rationales for equitable tolling (having been prevented in some extraordinary way from asserting

his rights, or raising the precise claim in the wrong forum) . . . . I also find that [Plaintiff] has not

alleged any facts that credibly could constitute grounds for applying equitable estoppel." *Id.* The

ARB affirmed the ALJ's findings, adding that the Board "agree[d] with the ALJ that [Plaintiff]

failed to present persuasive reasons to invoke equitable tolling." A.R. 736.

The Court does not find the ARB's decision to be arbitrary or capricious; the distinction

between actively misleading a plaintiff as to the terms of an employer-employee relationship and

actively misleading a plaintiff as to his cause of action is readily understandable and has been enforced by the ARB in other, similar cases. *See, e.g.*, *In the Matter of: Seyanabou A. Ndiaye, Complainant v. CVS Store No. 6081, Respondent*, ARB No.: 05-024, 2006 WL 3508487, at *5 ("[T]here is no evidence that the Respondent actively misled the Complainant with respect to her rights to file a complaint . . . ."). Further, the evidence in the record does not detract from the ARB's decision. Wipro's December 27, 2005 letter stating that "the terms of this letter agreement shall control the terms and conditions of your employment" does not so clearly rise to the level of actively misleading the Plaintiff about the nature of his claim such that would require remand, and there is no other evidence in the record showing that Plaintiff "could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007).

Regarding equitable estoppel, Plaintiff appears to conflate the principles of equitable estoppel with the very nature of his claim. Arguing that Wipro's 2005 letter is misleading insofar as the INA's applicable statutes and regulations governing authorized and unauthorized deductions supersede any contrary terms of Plaintiff's employment is tantamount to arguing that Wipro unlawfully deducted amounts from Plaintiff's wages. *Coppinger-Martin v. Solis*, 627 F.3d 745, 752 (9th Cir. 2010) (Plaintiff's "attempt to invoke equitable estoppel merges the substantive wrong with the tolling doctrine.") (reviewing an ARB decision). Thus, the ARB's decision to affirm the ALJ's declination to exercise equitable estoppel is also not arbitrary, capricious, or an abuse of discretion. Therefore, summary judgment is entered for the Government and Wipro on Count Five.

*vi.   Count Six: "Aggrieved Party and Interested Party Status"*

In Count Six of Plaintiff's Amended Complaint, asserted against the Government and Wipro, Plaintiff appears to seek review of the ARB's decision that Plaintiff did not qualify as an aggrieved

party by arguing that Plaintiff "is an *aggrieved party* as an employee, as a potential competitor and a worker in a specialty occupation."[27] Pl.'s Br. at 27 (emphasis in original). Plaintiff also asserts that he is an "interested party" as a "credible source." *Id.* at 28.

### A. Aggrieved Party

"Any aggrieved party, as defined in § 655.715, may file a complaint alleging a violation described in § 655.805(a)," pertaining to the enforcement of H-1B labor condition applications." 20 C.F.R. § 655.806. The regulation further states that "[a] complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA." *Id.* According to 20 C.F.R. § 655.715,

> Aggrieved party means a person or entity whose operations or interests are adversely affected by the employer's alleged non-compliance with the labor condition application and includes, but is not limited to:
> (1) A worker whose job, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor condition application;
> (2) A bargaining representative for workers whose jobs, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor condition application;
> (3) A competitor adversely affected by the employer's alleged non-compliance with the labor condition application; and
> (4) A government agency which has a program that is impacted by the employer's alleged non-compliance with the labor condition application.

*Id.* In her March 28, 2011 decision and order, the ALJ found that Plaintiff could not bring his claim as an aggrieved worker because the date of the last potentially unlawful deductions occurred in March 2006, which was more than twelve months before Plaintiff's complaint. A.R. 230, 232.

---

[27] In his Amended Complaint, Plaintiff also asserts that he has "aggrieved party status" as a "worker in specialty occupation." Am. Compl. at 53.

Further, Plaintiff could not bring a claim as an aggrieved competitor because he did not, in fact, establish a competing business against Wipro. A.R. 231. The ARB affirmed the ALJ's decision on both bases. Specifically as to Plaintiff's claim that he was an aggrieved competitor, the ARB stated that "[t]he ALJ correctly explained that the undisputed evidence, particularly [Plaintiff's] own admissions, demonstrate that he was not Wipro's 'competitor' and, therefore, not adversely affected by the alleged violation." A.R. 737.

The Court has *supra* affirmed the ARB's decision that Plaintiff's complaint as an aggrieved worker was untimely. As to Plaintiff's complaint as an aggrieved competitor, the Court finds reasonable the ALJ and ARB's interpretation of an aggrieved "competitor" as reflected in § 655.715 to preclude potential or future competitors. Plaintiff's April 22, 2010 email acknowledges that he "did not actually set up the business but was in the initial stage of setting up the business after returning [to India] from [the] USA in May 2009," A.R. 81. Plaintiff's argument that "there is no requirement in the INA statute or DOL regulations that in addition to filing a timely complaint . . . a complaint has to 'prove' that he is an aggrieved party" is unpersuasive, because § 655.806 only states that an aggrieved party" may file a complaint alleging H-1B LCA violations. Further, Plaintiff's policy argument that a narrow reading of § 655.715 would "dry up channels of valuable information for the agency to enforce laws that benefit[] U.S. workers" is reasonably refuted by the ALJ's statement that treating Plaintiff as a competitor would "open the door to an unlimited number of potential claimants," and because the ARB's reasoning behind its decision satisfies our limited review. *Chao v. Roy's Const., Inc.*, 517 F.3d 180, 186 (3d Cir. 2008) ("[A] reviewing court shall set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (quoting 5 U.S.C. § 706 (2000)).

33

Plaintiff also seeks review of the ALJ's finding that Plaintiff was not an aggrieved party as a "worker in a specialty occupation," who was in non-productive status within 12 months of filing the complaint.[28] The ALJ found that "the term 'worker' equates to 'employee' [under 20 C.F.R. § 715], and that [Gupta's] complaint as a former employee of [Wipro] is encompassed in its listing of 'worker' as a type of aggrieved party." Because the 12 month limitations period in 20 C.F.R. § 806 "relates to all complaints by any aggrieved party," the ALJ found that Gupta's "attempt to carve out a separate category of aggrieved party by claiming that he also qualifies because he is (or was) a 'worker' in a specialty industry must fail." A.R. 231 n.12. The ARB did not specifically address the ALJ's finding in either of its two decisions in these proceedings.

20 C.F.R. § 655.715 clearly provides a single definition for an aggrieved party who is a worker: "[a] worker whose job, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor condition application." And, as discussed *supra*, 20 C.F.R. § 655.806 and 655.807 are equally clear: "information concerning possible violations must be submitted not later than 12 months after the latest date on which the alleged violation(s) were committed." 20 C.F.R. § 655.807; *see also* 20 C.F.R. § 655.806(a)(5). Therefore, the Court finds

---

[28] Plaintiff does not provide any meaningful factual or legal support for this argument, either in his Amended Complaint or in his briefing; he merely cursorily states that he "has worked in [the] USA for several years on [an] H-1B visa of Wipro as well as some other employers in specialty occupation. Any LCA violations by Wipro or any other employer that result in [the] lowering of 'required wages' are prejudicial to him as a participant worker in the H-1B program." Am. Compl. at 53.

Plaintiff also cites to *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. Jun. 13, 2014), for the proposition that "workers displaced by lax visa policies from jobs they otherwise would hold fall within the class of individuals whom the INA seeks to protect." *Id.* at 1018. However, *Mendoza* is inapplicable here: at issue in *Mendoza* was the right of U.S. workers, who were affected by the DOL's new special procedures that "establish the minimum wages and working conditions employers must offer U.S. sheepherders, goatherders, and open-range (cattle) herders before hiring foreign herders [under the H-2A guestworker program]," to file a lawsuit alleging that the DOL violated the APA by issuing the special procedures without notice and comment. *Id.* at 1007.

that the ALJ's decision that Plaintiff's alleged status as a "worker in a specialty occupation" in non-productive status within 12 months of filing a complaint did not create a separate "aggrieved party" basis on which to file a DOL complaint was not arbitrary, capricious, or an abuse of discretion.[29]

### B.   "Credible Source"

Plaintiff also argues that the ARB's decision to affirm the ALJ's denial of Plaintiff's request for a hearing on Plaintiff's complaint of alleged violations pertaining to other H-1B Wipro employees as a "credible source" complaint under 20 C.F.R. § 655.807 was not supported by the record and that Plaintiff was a credible source.

20 C.F.R. § 655.807 sets forth how someone who is not an "aggrieved party" may allege H-1B LCA violations and how such allegations will be processed. Plaintiff appears to have first raised the argument that he is a "credible source" in his supplemental briefing preceding the ALJ's March 28, 2011 decision. In that opinion, the ALJ noted that § 655.807(a)

> provides that such complaints may be investigated only after the Administrator refers the matter to the Secretary, and the Secretary . . . personally authorizes investigation . . . . Whether or not the information [Plaintiff] provided was credible, under the regulation such information . . . can form the basis for an investigation only upon the personal authorization of the Secretary . . . . The regulation specifically states that no hearing is available from a decision by the Administrator declining to refer allegations to the secretary. The Administrator's discretion in this area is plenary and nonreviewable. Consequently, I do not have the authority to address [Plaintiff's] assertion that this allegation should be investigated, because he is a "credible source."

A.R. 232 (internal citations omitted).

The ARB affirmed the ALJ's decision on this issue, stating that "[a]s the ALJ noted, there is no evidence that the Administrator or other Labor Department official exercised . . . discretion

---

[29] Further, as discussed and affirmed *supra*, the ALJ and ARB considered Plaintiff's complaint about Wipro's allegedly unauthorized deductions as an aggrieved worker, and dismissed the complaint because Plaintiff filed it more than twelve months from the last alleged violation.

[to initiate an investigation under § 655.807] in this case, and the regulations prohibit parties from appealing the Labor Department's exercise or refusal to exercise such discretion." A.R. 737. However, the ARB noted that its decision

> neither incorporate[s] or reject[s] the ALJ's conclusion that the Administrator must refer credible source complaints to the Secretary for certification. Our conclusion is that parties can only appeal the Administrator's determination of a credible source complaint following an investigation performed under Section 655.807. Such investigation did not occur in this case and, therefore, we affirm the ALJ's rejection of Gupta's request for a hearing as a credible source.

A.R. 737. The ALJ and ARB are correct in that §655.807(h) states that "[n]o hearing shall be available from a decision by the Administrator declining to refer allegations addressed by this section to the Secretary, and none shall be available from a decision by the Secretary certifying or declining to certify that an investigation is warranted." *Id.* Further, there is a "presumption that agency decisions not to institute proceedings are unreviewable under 5 U.S.C. § 701(a)(2)," and Plaintiff did not provide, nor does this Court find, evidence that would overcome this presumption as it applies to § 655.807. *Heckler v. Chaney*, 470 U.S. 821, 837 (1985).

Therefore, to the extent Plaintiff is seeking review of the ARB's decision to affirm the ALJ's decision on Plaintiff's argument that his complaint should be accepted and reviewed as a "credible source" complaint under § 655.807, that argument must fail.[30]

Therefore, summary judgment will be granted on Count Six to the Government and Wipro, and against Plaintiff.

---

[30] To the extent Plaintiff asserts that his complaint should also be accepted as a non-aggrieved party in his capacity as an employee, a potential or future competitor, or a "worker in a specialty occupation," *see* Am. Compl., the same reasoning applies: DOL's decision not to investigate under 20 C.F.R. § 807 is unreviewable.

36

vii. *Counts Eight and Nine: Unauthorized Deductions and Failure to Pay Wages*

In Counts Eight and Nine, Plaintiff asserts direct claims, in the first instance, against Wipro by arguing that Wipro violated the INA's wage regulations by (1) taking out unauthorized deductions and (2) failing to pay required wages to Plaintiff, during the period between May 2003 and June 2008.[31] However, the INA does not authorize a private right of action to enforce the laws regarding payment of wages to H-1B workers; rather, claimants must go through administrative channels and may only seek judicial review once administrative remedies have been exhausted. "[N]othing in [§ 1182(n) of the INA] indicates that Congress intended to provide a private right of action in federal court to enforce violations of [the statute] in the first instance." *Shah v. Wilco, Inc.*, 126 F.Supp.2d 641, 648 (S.D.N.Y. 2000). "Not only do comprehensive administrative mechanisms exist, but also the legislative history of the Immigration and Nationality Act yields no support for the proposition that Congress intended to create a private right of action" in Section 1182(n), the INA section governing LCAs. *Biran v. JP Morgan Chase*, No. 02 Civ. 5506(SHS), 2002 WL 31040345, at *3 (S.D.N.Y. Sept. 12, 2002). "Accordingly, 'Section 1182(n) does not provide for a private right action in federal court in the first instance for complaints concerning an employer's violation of the Section.'" *Gupta v. Headstrong, Inc.*, No. 12 CIV. 6652 RA, 2013 WL 4710388, at *4 (S.D.N.Y. Aug. 30, 2013) (quoting *Shah*, 126 F.Supp.2d at 647–48); *see also Watson v. Bank of Am.*, 196 F. App'x 306, 307 (5th Cir. 2006) (Plaintiff "had no private right of action in the first instance under 8 U.S.C. § 1182(n), the subsection governing the H–1B program and providing procedures for enforcing its requirements."); *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 423–

---

[31] In Count Seven of Plaintiff's Amended Complaint, Plaintiff seeks declaratory relief with respect to Counts One through Six of his Amended Complaint. Am. Compl. at 55–57.

24 (4th Cir. 2005) ("We are of opinion and hold that an implied private right of action in favor of [the plaintiff] is not implied under 8 U.S.C. § 1182(n).").

Therefore, Plaintiff's attempt in Count Eight to re-litigate his DOL complaint of unauthorized deductions, and his attempt in Count Nine to raise a claim in the first instance that Wipro failed to pay wages to Plaintiff between 2006 and 2008 in Count Nine, must fail.[32] Accordingly, summary judgment is granted for Wipro and denied for Plaintiff on Counts Eight and Nine.

### viii.   Plaintiff's Remaining Claims and Motions

Because the Court has affirmed the ARB's final decision and order, Plaintiff's remaining claims for declaratory relief, a preliminary injunction, compensatory damages, punitive damages, pre- and post-judgment interest, and litigation expenses must also fail.[33] Plaintiff also subsequently

---

[32] Plaintiff states, in his Amended Complaint, that his claim in Count Seven "can also be considered under state law tortious breach of contract by considering the LCA as an employment contract." Am. Compl. ¶ 254. However, the federal courts that have considered this issue have found that the LCA is not considered an employment contract for the purposes of a breach of contract claim. *Shibeshi v. Philander Smith Coll.*, No. 4:11CV00513 JMM, 2011 WL 4529455, at *2 (E.D. Ark. Sept. 30, 2011) *aff'd*, 467 F. App'x 544 (8th Cir. 2012) (Plaintiff "alleges that the Labor Condition Application which employers file with the Department of Labor in order to employ non-immigration workers through the specialty occupation visa program is an employment contract. The Court cannot agree. While this document may be contractual in nature between the Defendant and the Department of Labor, it is not a contractual in nature between Plaintiff and the Defendant. "); *Compunnel Software Grp.*, 2015 WL 1224298, at *5 (An "LCA cannot sustain a breach of contract claim . . . . allowing [such a] claim to be actionable would subvert the federal statutory scheme."). This Court agrees with its sister courts and finds that an LCA is not an employment contract and, thus, cannot form the basis of a breach of contract claim.

Accordingly, to the extent Plaintiff is pleading Count Seven as a breach of contract claim, such a claim must fail.

[33] In his motion for summary judgment, Plaintiff asserts in Count Eleven ("Compensatory Damages") that Plaintiff "prays for liquidated damages" under N.Y. Lab. Law § 198 and the Fair Labor Standards Act." Pl.'s Br. at 33. However, Plaintiff does not assert any claims under those laws in his Amended Complaint. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008). Accordingly, the Court will not consider Plaintiff's arguments under N.Y. Lab. Law § 198 or the FLSA here.

filed a motion for preliminary equitable relief "to restrain Wipro from withholding his required wages and Order Wipro to forthwith repay all amounts taken as unauthorized deductions from Gupta's wages and/or the amount of required wages that Wipro failed to pay Gupta during the H-1B employment period." Because the Court has affirmed the ARB's decision on the bases challenged by Plaintiff, Plaintiff's motion for preliminary injunctive relief is moot. Therefore, the Court grants summary judgment on the remaining claims in Plaintiff's Amended Complaint and denies Plaintiff's motion for equitable relief.

Finally, Plaintiff filed on April 14, 2015, during the pendency of these motions for summary judgment, a "Motion for leave to file supplemental claims and add a party," seeking leave to add the following supplemental claims: (i) breach of implied-in-fact contract, (ii) unjust enrichment and quantum meruit [sic], (iii) promissory estoppel, and (iv) unpaid wages under FLSA." Plaintiff also requested "for leave . . . to add the President of Wipro as a party-defendant for the FLSA claims." Pl.'s Br. in Support of Mot. for Leave to File Supplemental Claims. Plaintiff has attached a document titled "(Proposed) Supplemental Claims," which the Court construes to be a Proposed Amended Complaint, to his motion.

Plaintiff's proposed supplemental claims are separate and distinct from the judicial review of the ARB's Final Decision and Order that Plaintiff had originally sought (and on which he moved for summary judgment). Further, the Court has already determined that Plaintiff's Amended Complaint is being dismissed because summary judgment for the Government and for Wipro is appropriate. Therefore, Plaintiff's newly-raised claims should be brought in a separate lawsuit, and

Plaintiff's "Motion for leave to file supplemental claims and add a party" is denied without prejudice.[34]

## III.    Conclusion

For the above reasons, Plaintiff's motion for summary judgment is denied and the Government and Wipro's motions for summary judgment are granted. Further, Plaintiff's motion for equitable relief is also denied. An appropriate order will follow.

Dated: April 27, 2015                                       /s/ Freda L. Wolfson
                                                            The Honorable Freda L. Wolfson
                                                            United States District Judge

---

[34] The Court makes no finding regarding the viability or timeliness of the newly-proposed claims and the proposed addition of a party. The court notes, however, that in the proposed claims, asserted less than two weeks ago, Plaintiff maintains that all of the asserted violations are "continuing" violations, because Plaintiff argues that he was never terminated from Wipro's employment and thus remains a Wipro employee to this day. See Pl.'s Motion for leave to file supplemental claims and add a party.